FILED IN CHAMBERS
U.S.D.C. - Rome

JUL 24 2019

JAMES N. HATTEN, Clerk
By: _____

(USAO GAN 6/10) Search Warrant

# United States District Court
## NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

"The Devices," as described below, which are presently located at FBI Rome RA.

APPLICATION AND
AFFIDAVIT FOR
SEARCH WARRANT

Case number: 4:19-MC-43

I, William M. Wilson, being duly sworn depose and say:

I am a Task Force Officer with the Federal Bureau of Investigation and have reason to believe that in the property described as:

**a Samsung Galaxy S7 Edge cellular telephone, Model SM-G935V, IMEI number 357753074427033 and a Samsung Galaxy S7 cellular telephone, model SM-G930V, IMEI 352214080509921, collectively "the Devices."** The Devices are currently located at FBI Rome RA, 600 East 1st Street, Rome, Georgia,

in the Northern District of Georgia there is now concealed certain information, namely,

**See Attachment "B"**

which constitutes evidence of a crime, contraband, and property used in committing a crime, concerning violations of Title 21 U.S.C. § 841(a)(1)(possession with the intent to distribute controlled substances) and Title 18 U.S.C. § 922(g)(1)(possession of firearm by convicted felon). The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT

Continued on attached sheet made a part hereof.

Sworn to before me, and subscribed in my presence

_____
Signature of Affiant
FBI TFO William M. Wilson

July ____, 2019
Date

Rome, Georgia
City and State

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer
AUSA Michael Herskowitz

_____
Signature of Judicial Officer

## AFFIDAVIT

I, William M. Wilson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) Northwest Georgia Criminal Enterprise Task Force and have been so assigned since January 2016. I am employed by the Georgia Department of Corrections (DOC) as a Special Agent and have been so employed since February 2015. Prior to my employment with DOC, I was employed with a sheriff's office for twelve years. I graduated Magna Cum Laude with a Bachelor of Science degree in criminal justice and graduated with a Master of Science degree in Public Safety Administration. I graduated from the Basic Law Enforcement Training Course in 2003 and graduated from the Georgia Bureau of Investigation (GBI) Basic Agent Course in 2015 where I received training in the investigation of crimes and utilizing technology in investigations such as the recovery of electronic evidence on cellular communication devices.

3. During my tenure in law enforcement, I have participated in felony investigations of state and federal law that included numerous controlled substances, drug trafficking, sexual assault, wire fraud, and RICO investigations, as well as numerous other violations of law. I have participated in multiple investigations where electronic communication devices, such as cellular

telephones, were utilized to facilitate the trafficking of illegal drugs and money that were proceeds from the trafficking of illegal drugs and other crimes. During my law enforcement career, I have written and executed search, seizure, and arrest warrants pertaining to the seizure of all types of criminal evidence, such as illegal drugs, drug paraphernalia, drug records, and drug proceeds as well as evidence of other types of crimes and arrests of individuals involved in drug trafficking and money laundering activities. I have initiated, conducted, and participated in at least 100 investigations involving drug trafficking activities and have deployed various investigative techniques during those investigations.

4. Based on my training and experience, I am familiar with drug traffickers and gang members who commonly have in their possession firearms, including, but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons; that said firearms are used to protect and secure the gang member and/or drug trafficker's property, which may include, but not limited to narcotics, narcotics paraphernalia, U.S. currency; and that weapons are tools of a narcotics trafficker's trade. I am also familiar that drug traffickers and gang members will use communication devices, such as cellular telephones to send photographs, videos and text messages of guns they are trying to sell or purchase. Gang members often use cellular phones to take photographs and videos of themselves with guns to help enhance their status within the gang and as a fear tactic to other gang members and/or civilians. I am familiar that drug traffickers often use multiple cellular phones to conduct drug business, often times using one device to contact their drug suppliers and another device to contact their drug customers.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.     The property to be searched is a Samsung Galaxy S7 Edge cellular telephone, Model SM-G935V, IMEI number 357753074427033 and a Samsung Galaxy S7 cellular telephone, model SM-G930V, IMEI 352214080509921, collectively "the Devices." The Devices are currently located at FBI Rome RA, 600 East 1st Street, Rome, Georgia, within the Northern District of Georgia.

7.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B, that relate to violations of 18 U.S.C. 922(g)(1) (possession of a firearm by a convicted felon) and/or 21 U.S.C. 841(a)(1) (possession of controlled substances with the intent to distribute).

## PROBABLE CAUSE

8.     On June 20, 2019, I received information from a confidential human source (CHS) involving a threat to human life. According to the CHS, an inmate within the Georgia Department of Corrections instructed Dustin Womack ("Womack"), the suspected owner of the Devices, to "shoot up" a particular residence. Womack is a gang member, convicted felon, and had an active warrant for a probation violation. As a convicted felon, Womack is prohibited from possessing a firearm.

9.     On June 21, 2019, law enforcement officers located Womack at the Sunrise Inn and Suites, 1610 Martha Berry Blvd., Rome, Georgia, forced entry into Womack's room, and witnessed Womack run towards the bathroom. While apprehending Womack, officers observed a

3

Springfield Armory pistol in the bathtub as well as suspected methamphetamine on a nightstand. Officers secured the motel room and obtained a State of Georgia search warrant.

10. Upon execution of the search warrant, law enforcement seized the pistol as well as large quantities of methamphetamine and ledgers from a safe within the room. Based upon my training and experience, the quantity of methamphetamine together with the ledgers indicate that the drugs were intended for distribution and sale. Also inside of the safe was a wallet with Womack's identification.

11. The Devices were located inside of the room on a bathroom sink area. Womack made statements to law enforcement indicating that the items inside of the room belonged to him. Although two females were also inside of the room, the females had cellular phones which were attributed to them.

12. On June 25, 2019, I obtained the Devices from local law enforcement and secured them in a locker at the FBI Rome RA, where they remain currently. The Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

13. I know that Springfield Armory does not manufacture firearms in the State of Georgia. Therefore, the firearm referenced above and found in the bathtub moved in and affected interstate commerce.

4

## TECHNICAL TERMS

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

7

15. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://www.samsung.com, I know that the Devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

8

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    18. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques,

9

including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

19.  *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

20.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

## **ATTACHMENT A**

The property to be searched is a Samsung Galaxy S7 Edge cellular telephone, Model SM-G935V, IMEI number 357753074427033 and a Samsung Galaxy S7 cellular telephone, model SM-G930V, IMEI 352214080509921, collectively "the Devices."

The Devices are currently located at FBI Rome RA, 600 East 1st Street, Rome, Georgia, within the Northern District of Georgia.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. 922(g)(1) (possession of a firearm by a convicted felon) and/or 21 U.S.C. 841(a)(1) (possession of controlled substances with the intent to distribute), and involve Dustin Womack, including:

   a. lists of drug customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording Dustin Womack's schedule or travel;

   e. all bank records, checks, credit card bills, account information, and other financial records; and

   f. possession or use of firearms.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted

by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.